RICHARD C. HALL ET AL., Appellants.—In the matter of the estate of ELIZA S. HALL, deceased.

WILL, CONSTRUCTION OF.—E. S. H., by her last will and testament, bequeathed to her daughter E. one-fifth of her estate for life, with power, if she continued unmarried, to dispose of the same by will after the decease of her mother, and in case of her dying intestate and unmarried, her share was devised to the granddaughters of the testatrix living at her death. E. died in the life time of her mother, unmarried, leaving a will in which, after specific bequests, she devised all her property to her said mother. E. S. H. afterwards died; in the distribution of her estate, it was held :

1st. That E. had no interest in the share bequeathed to her which she could dispose of by will, until after the death of her mother ; and that the will of E., prematurely made, could not defeat the gift over to the granddaughters.

2nd. That the making a will by E., and her dying intestate, must be construed to mean making a will and dying intestate after the death of the mother.

3rd. That the death of E. during the life of her mother, leaving a will, did not cause the bequest to her to abate ; E. S. H. cannot be considered as having died intestate as to that one-fifth, but it passed to the granddaughters by operation of her will.

APPEAL from the Orphans' Court for Baltimore city.

This is an appeal from a *pro forma* order of the Orphans' Court of Baltimore city, passed on the 25th day of September, 1866, requiring the executor of the last will and testament of Eliza S. Hall, deceased, to allot and distribute to and amongst the granddaughters of the testatrix who were living at the time of her decease, the one-fifth part of all the rest and residue of her estate which was devised by her

in trust for the sole and separate use of Eugenia S. Hall during her lifetime, &c.

By her will, which was executed the 19th of November, 1861, the said testatrix, after a few small legacies, devised all the residue of her estate in equal shares to her five children, Benjamin Rush Hall, Richard Clarence Hall, William Taylor Hall, Mary Cornelia Butts and Eugenia Sophia Hall. The shares of the three sons were severally devised to them absolutely; but provision was made against the event of the share of Benjamin Rush Hall, who was a resident of Louisiana, becoming liable to confiscation, in which case it was not to vest in him at the testatrix's death, but was to pass over to her two other sons in joint tenancy; and provision was also made against the contingency of the dying of Richard Clarence Hall before the testatrix, under the influence, evidently, of a desire to make provision for his wife in such an event.

The shares or equal fifth parts of the testatrix's two daughters, Mary Cornelia Butts and Eugenia Sophia Hall, were devised to Richard Clarence Hall and William Taylor Hall in trust for their sole and separate use respectively, during their natural lives, and at their decease, respectively, in trust for their respective children and descendants living at their death, their heirs and assigns, the issue of any deceased child to take their parent's share, with a provision that in case of the decease of any of the children of the testatrix's said two daughters under age, and without issue living at the time of his death, the part of the child so dying should accrue to his surviving brothers and sisters. After some provisions intended to meet the case of the death of Mrs. Butts without issue, and relating to her share exclusively, the testatrix proceeded to limit the share of Eugenia Sophia in manner following:

"And it is further my will, that my daughter, Eugenia Sophia Hall, if she be and continue unmarried, shall have

the power after my decease, to dispose by will of all that one equal undivided fifth part of my estate hereinbefore devised and bequeathed by me to my sons, Richard Clarence and William Taylor Hall, in trust for her sole and separate use and benefit during her natural life. And in case it shall so happen that my said daughter, Eugenia Sophia, shall depart this life intestate and unmarried, or having been married, shall die without descendants living at her death, or such descendants shall all subsequently die under lawful age, then I give, devise and bequeath the same equal undivided fifth part of my estate to my granddaughters or granddaughter living at the time of my decease, their heirs, executors, administrators and assigns, absolutely, to be equally divided between them as tenants in common, share and share alike. And I request, authorise and fully empower the above named trustees, or their successors, to make such equal division as soon as convenient after the death of my said daughter, Eugenia Sophia, and to distribute to or among said devisees respectively their said portion, notwithstanding that either of my said granddaughters may not have arrived at lawful age. And in case any of my said granddaughters shall depart this life under lawful age, and without issue living at the time of her decease, then the part or share of the one so dying shall become the property of the survivors or survivor of them, their heirs, executors and administrators, share and share alike."

The five children named in the will were all living at the time of making it. But Eugenia Sophia, without having married, died in the lifetime of her mother, leaving a last will, duly executed on the 9th day of January, 1864, by which she devised certain property specifically, and by a comprehensive clause, all the rest of her property to her mother, the said Mrs. Eliza S. Hall, constituting Richard Clarence Hall executor.

This appeal is by the executor and William T. Hall, from the *pro forma* order above referred to.

*Arthur W. Machen* for the appellants.

1. Our first proposition is, that a gift limited upon the natural expiration of a life estate which itself has failed to come into existence, by reason of the devisee for life having died before the testator, can never take effect contrary to the intention. *Underwood vs. Wing,* 4 *De G. M. & G.,* 633, 664. *Calthorp vs. Gough,* 4 *T. R.,* 707, *note.* *Doe vs. Shippard,* 1 *Doug.,* 79. 2 *Williams' Ex'r,* 1144. *Baker vs. Hanbury,* 3 *Russ,* 340. It is only by bearing this principle in mind that it is possible to reconcile the class of cases represented by *Jones vs. Westcomb,* 1 *Eq. Cas. Ab.,* 245, where the gift over has been sustained, with cases of at least equally unquestionable authority where the gift over has been held to fail, as is very clearly pointed out by the Lord Chancellor in *Mackinnon vs. Sewell,* 2 *My. & K.,* 209, 212, 213, 217, 219, 220, a leading case of the former class.

Evidence of intention that Eugenia must survive the testatrix to give effect to the limitations in this clause, is found in the significant words, "after my decease," coupled with the power to dispose by will. These words could not have any operation as qualifying the power, for it is manifest, that as the will of Mrs. Hall could not go into effect before her own death, it was impossible that her daughter, under any circumstances, or under any form of gift, could exercise the power until after that time. She could not execute the power before it existed. (See *Glenn vs. Belt,* 7 *G. & J.,* 362, 365.) The words, therefore, have no meaning as restrictive of the power, and the testatrix cannot be supposed guilty of the absurdity of employing them for any such purpose. They must, then, have been used to indicate, that in the mind and contemplation of the testatrix,

Eugenia must outlive her in order that any of the subsequent limitations should have operation. Meaningless in connection with the power, they express the condition upon which the alternative limitation was made to depend.

Evidence of such intention is also visible in the express provision made for the case of the pre-deceasing of Richard Clarence Hall, of whose one-fifth a special disposition is made in the event of his not being in life to take it. Either from entertaining no apprehension as to the health of her other children, or some other motive, she did not think fit to provide for the occurrence of a similar contingency with respect to her other children. The particular pains which she took to provide specially for such a case in regard to Richard Clarence, indicates that she meant to make no provision for it in regard to Eugenia.

Further support of such construction is found in the principle of equality in the division of her estate amongst her living children, manifested in the whole will. She did not divide her property into six parts, according to the number of children she had had when Clinton J. Hall, her deceased son, was yet alive, but into five parts, according to the number of her then living children. The granddaughters are never introduced as objects of original or primary favor. The limitation to them is always remote and improbable. It is liable to be defeated in respect to Mrs. Butts' one-fifth by her leaving any issue, and she had issue. In respect to the fifth of Eugenia Sophia, who was unmarried when the will was made, they were liable to be defeated by any testamentary disposition it might be her pleasure to make.

The succession of the heir is not to be defeated by implication, unless it be a necessary implication. *Ridgely vs. Bond,* 18 *Md. Rep.,* 448. *Shuldham vs. Smith,* 6 *Dow.,* 22, 56, *per Lord Eldon.* There is no such implication here. On the contrary, the general intent favors our con-

struction. The testatrix evidently purposed no modification of the rules of descent, except such as was requisite to protect her daughters against the consequences of coverture, and her son, who resided at the South, against the danger of confiscation. It certainly must be desired to accomplish such a disposition, in the event which has happened, as the testatrix would herself have made, if the event had been before her eyes. And it is impossible to doubt that, if Eugenia's death had occurred before the will was made, Mrs. Hall would have divided her estate into four parts, according to the number of her surviving children, giving to each an equal share. And this is what the law accomplishes for her in the absence of an express provision for the case.

It is to be observed that while only a life estate was conferred on Mrs. Butts, without any power of devising, the power of disposition by will given to Eugenia is absolute, and the existence of granddaughters would not have effected her right of control in this respect. This feature of the will is evidently introduced for a purpose, and shows that, in any event, the testatrix had contemplated the exercise by her daughter, Eugenia, of a discretionary power to direct the property according to what might prove to be the condition of the family at a period subsequent to her own death. In the language of the Master of the Rolls, in *Calthorpe vs. Gough*, 4 *T. R.*, 708, *note*, "There was no event in which the children (devisees in remainder) could take anything which it was not in her power to deprive them of." And see *Baker vs. Hanbury*, 3 *Russ.*, 340, *and Sugden's argument there*.

The force of this consideration is not lessened, if we admit that the presence of a mere power of appointment may not be enough, in all cases, to prevent the gift over from operating independently. The relation of the parties in remainder to the person who has to exercise the power,

as whether they are her issue or next of kin, and, therefore, naturally to be the objects of her favor, in some mode, in case she should exercise it or otherwise, may have an important influence in determining any given case of doubt. The whole context, indeed, must be carefully considered, where the question is open, and the remainder is not expressly made dependent on a condition of survivorship, or some other condition.

II. It is an inflexible rule of law, that whenever a gift is perceived to be unequivocally limited upon any contingency, there is no longer room for construction, the contingency must be exactly fulfilled, or the gift fails. The liberality of construction exemplified in the class of cases of which *Jones vs. Westcomb* and *Avelyn vs. Ward* are the types, is only indulged for the purpose of ascertaining whether any contingency was really contemplated or not. A condition distinctly expressed must have full effect yielded to it, however more reasonable it may appear to us to substitute a condition somewhat different in character. *Denn vs. Bagshaw*, 6 *T. R.*, 516. *Dicken vs. Clarke*, 2 *Yo. & Col. Ex.*, 572. *Festing vs. Allen*, 12 *M. & W.*, 279. *Doo vs. Brabant*, 4 *T. R.*, 706. *Humberstone vs. Stanton*, 1 *Ves. & B.*, 385. *Williams vs. Jones*, 1 *Russ.*, 517. *Williams vs. Chitty*, 3 *Ves.*, 545. *Carpenter vs. Heard*, 14 *Pick.*, 449, 2 *Redfield on Wills*, 496 *and* 497, *note*, where the opinion of Putnam, J., in the last cited case is strongly commended.

A. The gift to the granddaughters in question is certainly contingent. Before they can take, Eugenia, to say nothing of any other condition, must have died intestate. But she did not die intestate. She has left a will perfectly executed, which upon its face disposes of everything she had.

It will not do to say that by "intestate" the testatrix did not mean what she has said, what all lexicographers

define to mean the words "dying without a will," (see Webster, Johnson, Bailey, Burrill, in verb.,) the meaning that it bears in the Testamentary Law of the State, (see Code, Art. 93, sec. 16,) but that what she really intended was, without making such a will as should dispose of said one-fifth. For this is to improve upon her will, and not to take it as we find it. There is no apparent necessity to justify the introduction of qualifying words : the clause, as it stands, involving no "absurdity, repugnance or incon-sistency." Gundry vs. Pinniger, 1 De G. M. & G., 505. Holmes vs. Craddock, 3 Ves., 319. Williams vs. Jones, 1 Russ., 518. Grey vs. Pearson, 6 Ho. Lords Cas., 61, 106.

Eugenia's will, had she survived her mother, was capable (under quite possible circumstances) of operating as a good execution of the power contained in her mother's will, the fact of Mrs. Hall's death occurring subsequently to the making of Eugenia's will not preventing the latter from operating upon the property since the Act of 1849, ch. 129. See 2 Sugd. on Pow., (7th ed.) 7. 1 Id., 407, 408.

In such a case, the event of Eugenia's having survived her mother, and of Eugenia's will having come to operate upon the one-fifth devised by Mrs. Hall's will, this portion of Mrs. Hall's estate would have gone, by virtue of Euge-nia's will and the Act of 1810, ch. 34, ( Code, Art. 93, sec. 304,) to Mrs. Hall's heirs and distributees. Glenn vs. Belt, 7 G. & J., 362.

Eugenia's last will, quæcumque via data, was assuredly a testamentary instrument, perfect in form of execution ; it appointed an executor, purported to dispose of all her property, and in the Court from which this appeal is taken, was proved as her will ; and without departing from all ordinary use of language, it is impossible to say that she died intestate. The natural force of the unambiguous words here used : "In case it shall so happen that Eugenia Sophia shall depart this life intestate," cannot be overcome

without resorting to a licentious latitude of construction which is entirely unexampled among respectable precedents. In cases where the temptation, from considerations of general equity, or the presumed intention of the testator, was far stronger than can be contended to exist here, the effort to escape the natural meaning of the words, or to modify it, by the interpolation of other words suggested by the context, has signally failed.

In *Andre vs. Ward*, 1 *Russ.*, 260, it was sought to interpolate the word *such*, and to treat "in case of my son's death leaving no issue," as equivalent to "in case of my son's death leaving no such issue," (referring to issue previously mentioned in the same sentence,) so as to support a gift over; but it was held that the construction could not be allowed.

In *Lennox vs. Lennox*, 10 *Sim.*, 400, the words were: "If Ann L. (legatee for life) shall survive any husband with whom she may intermarry," then to her, her executors, &c.; there was also a provision that if she should not survive her husband the legacy should go (in default of children) to her appointees, and if she should make no appointment, to the persons who would be entitled to take from her under the statute of distributions if she had died intestate and unmarried. Ann L. having died a spinster, it was strongly pressed on behalf of her personal representatives, that it could make no difference to the testator whether she had a husband who died in her lifetime, or whether she never had a husband at all; but the argument did not prevail and the gift was not sustained. See also *Swayne vs. Smith*, 1 *Sim. & St.*, 56. *Philpot vs. St. George's Hospital*, 21 *Beav.*, 134. *Boyce vs. Boyce*, 16 *Sim.*, 476. *Lee vs. Busk*, 14 *Beav.*, 459; *S. C. affd.* 2 *De G. M. & Gord.*, 810, and *Underwood vs. Wing*, 4 *De G. M. & Gord.*, 633.

B. But if it be considered that the sentence in question is

so tied to that which precedes it as to justify the insertion of words qualifying "intestate," by reference to "the power to dispose by will" previously mentioned, then, by the same reason, after or before the words, "depart this life" must be inserted the words, "after my decease," with which the grant of power is qualified. And treating these words as in, it is impossible that the claim of the grand-daughters should be sustained, as is shown by *Holmes vs. Cradock*, 3 *Ves.*, 317. And see 14 *Pick.*, 458.

The clause so interpreted reads thus: "My daughter, Eugenia Sophia, if she be and continue unmarried, shall have the power, after my decease, to dispose by will of all that one equal undivided fifth part, &c.   *   *   and in case it shall so happen that my said daughter, Eugenia Sophia, shall, after my decease, depart this life intestate and unmarried, &c., then," &c.

Upon the face of the whole clause it is manifest, that the words "after my decease" are words of condition affecting all the subsequent limitations. This case, like *Toldervy vs. Colt*, 1 *M. & W.*, 250, "ranges itself," in the language of ABINGER, C. B., "under that class of cases, in which a rule of construction founded on plain common sense, has been illustrated, namely, that, where a condition precedes a certain series of limitations, each of that series must be taken to be affected by that condition, unless there is a manifest intention upon the face of the will to be collected to the contrary; that is to say, in other words, you must follow the plain grammatical construction of the will in giving effect to the limitations, unless you find by some other parts of the will that the testator's intention was to deviate, in one particular, from that plain grammatical construction." 1 *M. W.*, 283, 284.

The Acts of 1810, ch. 34, and 1832, ch. 295, (Code Art. 93, sec. 304) have no operation upon the devise now in question. It is out of the power of any Legislature to make

a life estate outlast the life of the *cestui que vie*. The consequence, as to the posterior gift, is mere matter of construction. *Young vs. Robinson*, 11 *G. & J.*, 328. *Glenn vs. Belt*, 7 *G. & J.*, 362. *Craycroft vs. Craycroft*, 6 *H. & J.*, 54.

GOLDSBOROUGH, J., delivered the opinion of this Court.

The appellant, Richard C. Hall, as executor of Eliza S. Hall, filed his petition in the Orphans' Court of Baltimore city, alleging that he was ready and willing to distribute the estate of his testatrix ; but being in doubt as to the parties entitled to one undivided fifth part thereof bequeathed to Eugenia S. Hall, who died in the lifetime of her mother, the testatrix, he prayed for an order of distribution, which the Orphans' Court passed *pro forma*, on the 25th day of September, 1866, directing the executor to distribute the share of Eugenia amongst the granddaughters of the testatrix who were living at the time of her decease. From this order this appeal was taken.

Whether the ruling of the Court below is correct, depends upon the proper construction of the will of Mrs. Hall, which is dated the 19th day of November, 1861, and was admitted to probate on the 13th of March, 1865.

A careful examination of this will has satisfied us that the order of the Orphans' Court is correct.

The share bequeathed to Eugenia was for her life, and if she continued unmarried, she should have the power to dispose of the same by will, after the decease of her mother ; and failing to do so, her share was devised to the granddaughters of the testatrix living at her death. Eugenia died in the lifetime of her mother unmarried. Though she made a will which was admitted to probate, she had no interest in this share which she could devise, until the death of her mother. Her will was premature and could not defeat the rights of the granddaughters. Though it is

provided by the will of the mother that if Eugenia should die intestate and unmarried, still her making a will and dying intestate are correlative, and both must be construed to mean after the death of her mother.

In other words, the intestacy must have relation to the property devised, and over which Eugenia had the power of disposition, which power she could exert only upon the contingency of her surviving her mother. Her will, by which she devised the property to her mother, could not vest an interest in her mother, nor did the death of Eugenia in the lifetime of her mother cause the devise to her to abate, so that in neither event can the theory of the appellant be sustained that the mother died intestate of this share.

To give such a construction would be in direct conflict with the express provision of the will of the testatrix, which gave to Eugenia the power to make a will after the mother's death ; and failing to do so, her share passed to the granddaughters by operation of the will.

The order of the Orphans' Court must be affirmed, and this Court will pass a decree to that effect with costs in both Courts to be paid out of the estate.

*Order affirmed.*